**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Einaya Morciglio, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| The Procter & Gamble Company, | |
| Defendant. | |

Plaintiff, Einaya Morciglio (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by their attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      This action seeks to remedy the deceptive and misleading business practices of The Procter & Gamble Company (hereinafter "Defendant") with respect to the marketing and sale of Defendant's Tampax products throughout the state of New York and throughout the country (hereinafter the "Products").   Defendant's products include the following (hereinafter the "Products"):

- Tampax Pearl Light

- Tampax Pearl Regular

- Tampax Pearl Super Plus

- Tampax Pearl Super

- Tampax Pearl Ultra

- Tampax Pure Cotton Tampons

1

2.     Defendant improperly, deceptively, and misleadingly labeled and marketed their Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on their packaging that the Products are contaminated with or at the risk of being contaminated with unsafe levels of lead, which is a powerful neurotoxin that is known to cause *inter alia* cognitive deficits, mental illness, dementia, and hypertension.

3.     The Products' contamination is particularly egregious given the potentially severe and irreversible consequences of lead consumption.

4.     Defendant fails to disclose and materially omits on the Products' packaging that the Products contain, or are at risk of containing, Lead.

5.     Lead is a dangerous and harmful chemical when exposed to consumers. Scientists agree that there is no level of Lead that is safe. According to the Mayo Clinic, "[l]ead poisoning occurs when lead builds up in the body, often over months or years. Even small amounts of lead can cause serious health problems.  According to The World Health Organization, "there is no level of exposure to lead that is known to be without harmful effects."[1] At very high levels, lead poisoning can be fatal."[2]

6.     The lead contained in the Products is particularly concerning to consumers because the Products' intended use is to be inserted into a female's vagina.  As a result, the lead in the products can directly enter the bloodstream.

7.     The Products' contamination is particularly egregious given the potentially severe and irreversible consequences of Lead consumption and how the Defendant touts on its website how it prioritizes and tests for safety.[3]

---

[1] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[2] https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717
[3] https://tampax.com/en-us/about/tampon-safety-science/

8.    Lead is a powerful neurotoxin.  There is no safe blood level of lead.[4]  Lead exposure has been shown to reduce intelligence, and to increase the risk of mental illness, dementia, hypertension, arrhythmia, and breast cancer.[5]

9.    Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including Lead.

10.    Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the healthcare products they purchase to put inside their bodies will not contain, or risk containing, any knowingly harmful substances that cause injury.

11.    Unfortunately for consumers, like Plaintiff, the Products they purchased contained, or were at risk of containing, Lead.

12.    Plaintiff's independent testing confirmed and demonstrated the presence of Lead in the Products.

13.    Defendants are using a marketing and advertising campaign that omits from the Products' packaging and contents lists that the Products contain Lead.  This omission leads a reasonable consumer to believe they are not purchasing a product with a known neurotoxin when in fact they are purchasing a product contaminated with Lead.

14.    Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.

15.    Defendant's advertising and marketing campaign for the Products is false,

---

[4] *CDC – Lead – Tips – Sources of Lead – Folk Medicine*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Oct. 15, 2013), http://www.cdc.gov/nceh/lead/tips/folkmedicine.htm.
[5] Maryse F. Bouchard, PhD et al., *Blood Lead Levels and Major Depressive Disorder, Panic Disorder, and Generalized Anxiety Disorder in US Young Adults*, 66 ARCHIVES OF GENERAL PSYCHIATRY 1313, 1317 (Dec 2009); Marc G. Weisskopf et al., *Cumulative Lead Exposure and Prospective Change in Cognition Among Elderly Men*, 160 AMERICAN JOURNAL OF EPIDEMIOLOGY 1184, 1185, 1188, 1190-91 (2004); Olusegun I. Alatise, Gerhard N. Schrauzer, *Lead Exposure: A Contributing Cause of the Current Breast Cancer Epidemic in Nigerian Women*, BIOLOGICAL TRACE ELEMENT RESEARCH 127, 138 (Mar. 3, 2010).

deceptive, and misleading because it does not disclose the unsafe levels of Lead in the Products. Lead in bodily products is material to reasonable consumers, because this neurotoxin poses serious health risks, even in small dosages. Additionally, the Lead levels in the Products could not be known before purchasing them, and may not be determined without extensive and expensive scientific testing. Accordingly, consumers rely on Defendant to be truthful regarding the contents, including the existence of Lead in the Products.

16.    On the other hand, Defendant knew or should have known of the existence of Lead in the Products. Defendant sources the contents and manufactures the Products, and has exclusive knowledge of the quality control testing on the Products and the contents contained therein.

17.    Defendant has an independent duty to disclose the Lead in the Products based on *inter alia* the health risk associated with the use of the Products and/or because the Products are unfit for consumer use.

18.    Plaintiff and Class Members paid a premium for the Products based upon Defendant's marketing and advertising campaign. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations and omissions, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

19.    Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendant also breached and continues to breach its warranties regarding the Products. In addition, Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

20.     Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and The Procter & Gamble Company is a citizen of Ohio State; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

22.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

23.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

24.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff resides in Bronx, New York.  Plaintiff purchased the Products that contained Lead.  Plaintiff purchased the Products throughout the class period.  More specifically, Plaintiff purchased Defendant's Tampax Pearl Regular product at retail outlets including Target in Bronx, New York multiple times throughout the Class Period, with her most recent purchase in 2024 for a retail price of $4.99.  Prior to purchasing the Products, Plaintiff read the Product labels.

25.     Plaintiff purchased the Products in reliance on Defendant's representation that the Products don't contain Lead.  Plaintiff reasonably believes that products that do not list that they contain Lead do not contain Lead.  If the Products did not contain Lead, Plaintiff would purchase the Products in the immediate future.

26.     Had Defendant disclosed that the Products contained Lead, Plaintiff would not have been willing to pay the same amount for the Products and/or would not have been willing to purchase the Products.  Plaintiff purchased and paid more for the Products than they would have had they known the truth about the Products.  The Products Plaintiff received were worth less than the Products for which they paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

27.     Defendant, The Procter & Gamble Company, is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  Defendant is authorized to do business in New York.

28.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

**FACTUAL BACKGROUND**

29.     Consumers have become increasingly concerned about the effects of unhealthy ingredients in bodily products that they and their family members place into their bodies. Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such products. Tampons are defined as a medical device by the FDA, the medical device industry is one of the largest industries

Case 1:24-cv-08849-LGS    Document 1    Filed 11/20/24    Page 7 of 26

in the world with a valuation of $518.46 billion in 2023 and is expected to grow to $886.80 billion by 2032."[6]

30.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains Lead, or other unsafe and unhealthy substances, especially at the point of sale.  Therefore, consumers must and do rely on Defendant to truthfully and honestly report what their Products contain on their packaging or labels.  Indeed, testing for these chemically requires expensive and destructive scientific testing.  Given the relatively high price, no reasonable consumer would engage in such testing before purchasing the Products.

31.     Defendant markets and sells tampons under the brand name Tampax.  The Products are bodily menstrual products designed to be used as "protection" during menstruation by absorbing menstrual fluid and to protect against leaks.

32.     In August 2024, a scientific research article was published that addressed toxic metals, including Lead, were found in various tampons that were tested.[7]

33.     Independent testing of the Products was performed by an established laboratory specializing in chemical analysis of consumer products with methods successfully implemented for over 30 years.  Lead analysis of the tampons was conducted by the lab using a specialized version of the EPA 200.8 method with a technique called ICPMS (Ion Coupled Plasma Mass Spectrometry).  This involves treating the sample with acid to break it down, then diluting it before analyzing it with ICPMS.  The lab subsequently employs reliable standards from Inorganic Ventures to create a standard curve for accurate comparison.

34.     Plaintiff's independent testing has demonstrated that Defendant's Products contain unsafe levels of Lead.  Indeed, these levels of Lead pose serious health risks. The chart below

---

[6] https://www.fortunebusinessinsights.com/industry-reports/medical-devices-market-100085
[7] https://www.sciencedirect.com/science/article/pii/S0160412024004355

summarizes the test results:

| Product/Lot Number | Test Result |
|---|---|
| Tampax Pearl Light<br>3310243026 49 | Lead: 0.139 ppm |
| Tampax Pearl Regular/<br>4151243058 66 | Lead: 0.144 ppm |
| Tampax Pearl Super Plus<br>412924301462 | Lead: 0.180 ppm |
| Tampax Pearl Super<br>4175243032 62 | Lead: 0.149 ppm |
| Tampax Pearl Ultra<br>4109243007 43 | Lead: 0.199 ppm |
| Tampax Pure Cotton Tampons<br>4073243009 66/20:10 | Lead: < 0.10 ppm |

35.     Despite these risks, Defendant failed to include any disclosures regarding Lead levels on its Products.

36.     Defendant claims that consumers have the "right to know what's in the products you're using" yet, as illustrated below, Defendant mispresents and omits that the Products contain Lead, a harmful neurotoxin[8]:

---

[8] https://tampax.co.uk/en-gb/tampon-truths/what-is-tampon/



**#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND††**
LA MARQUE DE TAMPONS LA PLUS RECOMMANDÉE PAR LES GYNÉCOLOGUES AUX É.-U.††

✓ **FREE OF PERFUME**
SANS PARFUM

✓ **FREE OF ELEMENTAL CHLORINE BLEACHING**
SANS BLANCHIMENT AU CHLORE ÉLÉMENTAIRE

✓ **TAMPON FREE OF DYES**
TAMPON SANS COLORANT

✓ **CLINICALLY TESTED GENTLE TO SKIN**
DOUCEUR POUR LA PEAU ÉPROUVÉE EN CLINIQUE

INGREDIENTS/INGRÉDIENTS/INGREDIENTES: RAYON, COTTON, POLYPROPYLENE, POLYETHYLENE, POLYESTER/POLIÉSTER, GLYCERIN, PARAFFIN, ETHOXYLATED FATTY ACID ESTERS/ESTERS D'ACIDES GRAS ÉTHOXYLÉS/ÉSTERES DE ÁCIDOS GRASOS ETOXILADOS, PEG-100 STEARATE, TITANIUM DIOXIDE

Learn more about your product and its ingredients

Apprenez-en plus sur votre produit et ses ingrédients

TAMPAX.COM

*Our best Pearl protection ever*

*Notre meilleure protection Pearl jamais offerte*

SCAN ME



BALAYEZ-MOI

**USE FOR 8 HOURS MAXIMUM.**
LES TAMPONS PEUVENT S'UTILISER PENDANT UN MAXIMUM DE 8 HEURES.
PUEDEN USARSE POR UN MÁXIMO DE 8 HORAS.



††based on a 2020 survey/†† selon un sondage réalisé en 2020



37.     According to the World Health Organization, there is no safe level of lead exposure and that "exposure to lead can affect multiple body systems and is particularly harmful to young children and women of child- bearing age."[9]

38.     A study published in August 2023 titled *Medication Routes of Administration,* details thorough research and findings on the various bodily locations absorption and permeability efficacy regarding medication absorption and overall permeable efficacy into systemic circulation.[10] Moreover, the study highlights that the vaginal route "has the advantage of bypassing the first-pass effect" meaning that the vaginal route inherently has an absorption factor greater than other bodily areas due to its ability to bypass metabolism through the liver and directly into

---

[9] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health
[10] https://www.ncbi.nlm.nih.gov/books/NBK568677/

systemic circulation.[11] As a result, the liver is unable to safely filter toxins such as Lead through its metabolic function.

39.     Additionally, a 2011 published review study titled *The Vagina As A Route For Drug Delivery* concluded that the vagina has hire absorption efficacy when compared to oral absorption "because it allows the use of lower doses, maintains steady drug administration levels, and requires less frequent administration than the oral route."[12]

40.     Defendant is a large and sophisticated corporation that have been in the business of producing, manufacturing, selling, and distributing healthcare and consumer products for many years, including producing and manufacturing the contaminated Products.

41.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of their Products and possess unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of lead contamination, as well as the ability to test the Products for lead contamination prior to releasing the Products into the stream of commerce.

42.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of their Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

43.     Defendant knew or should have known of the Lead in the Products.  By law, Defendant has a duty and responsibility to implement controls to significantly minimize or prevent exposure to chemical hazards in the Products.  Defendant manufactures and sources the contents contained within the Products. Defendant tests the Products for quality control purposes, including

---

[11] *Id.*
[12] https://pubmed.ncbi.nlm.nih.gov/23229421/

the levels of toxic chemicals such as Lead contained therein. Defendant had or should have had exclusive knowledge of the Lead levels in the Products, and Plaintiff and the Class could not have known about this risk.

44.     Consumers reasonably rely on the marketing and information on Defendant's labels in making purchasing decisions. By not including Lead on the Products' packaging, marketing, and/or advertising, Defendant misleads reasonable consumers.

45.     Despite Defendant's knowledge of Lead in the Products, Defendant failed to provide any warning on the place that every consumer looks when purchasing a product –the packaging or labels—that the Products contain Lead.

46.     Defendant's concealment was material because people are concerned with what is in the items that they are putting into their bodies, as well as parents and caregivers being concerned with what they are providing to the children in their care. Consumers such as Plaintiff and the Class Members are influenced by the contents listed, as well as any warnings (or lack thereof) on the product packaging that they buy. Defendant knows that if it had not omitted that the Products contained Lead that the Products were not safe or healthy for bodily usage then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all).

47.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

48.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

49.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for the

Products.

50. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendants represented;

b. Paid a premium price for Products that were not what Defendants represented;

c. Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendants warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

e. They ingested a substance that was of a different quality than what Defendants promised; and

f. Were denied the benefit of the properties of the Products Defendants promised.

51. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

52. Plaintiff and the Class Members paid for Products that do not contain Lead. Since the Products do indeed contain lead, a harmful neurotoxin, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

53. Plaintiff and the Class Members all paid money for the Products they reasonably believed did not contain Lead; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff

and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

54.    Plaintiffs bring their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased the Products anywhere in the United States during the relevant statute of limitations.

55.    Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and all members of the "New York Subclass," which shall initially be defined as:

> All consumers who purchased the Products in the state of New York at any time during the relevant statute of limitations.

56.    Excluded from the Class is governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

57.    The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

58.    The Class and New York Subclass are properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

31.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New New York Subclass who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

32.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Products;

b.    Whether the Products contain Lead;

c.    Whether Defendant breached the implied warranty of merchantability relating to the Products;

d.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

e.    Whether Defendant's false and misleading statement concerning its Products were likely to deceive the public; and

f.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

33.    <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class and New York Subclass was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products and suffered the same injury. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

34.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seek to represent, she has a strong interest in

vindicating her rights and the rights of the Class and New York Subclass, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

35.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and New York Subclass. The Class and New York Subclass issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

36.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

      a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

      b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

      c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

      d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

      e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

      f.    This class action will assure uniformity of decisions among Class Members;

      g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

      h.    Class Members' interests in individually controlling the prosecution of

separate actions is outweighed by its interest in efficient resolution by single class action; and

    i.    It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Products because they offer "Protection" and did not contain Lead.

37.    Accordingly, this Class and New York Subclass are properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

38.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

39.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

40.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products and from the charging consumers monies in the future.

41.    Defendant misleadingly, inaccurately, and deceptively advertise and market the

Products to consumers. By misrepresenting the true contents of the Products, Defendant's marketing and labeling misleads a reasonable consumer.

42.    Defendant had exclusive knowledge of the Lead levels in the Products.

43.    Defendant's misrepresentations and omissions were material because consumers are concerned with the safety of bodily products that they purchase, and the contents therein.

44.    Defendant's improper consumer-oriented conduct—including Defendant's misrepresentation and omissions regarding the Lead levels in the Products—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representation willfully, wantonly, and with reckless disregard for the truth.

45.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a Products that—contrary to Defendant's representation and omissions—contain Lead. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

46.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

47.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

48.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

50.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

51.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent the existence of Lead in the Products. By misrepresenting the true contents of the Products, Defendant's marketing and labeling misleads a reasonable consumer.

52.     Defendant had exclusive knowledge of the Lead levels in the Products.

53.     Defendant's misrepresentations and omissions were material because consumers are concerned with the safety of bodily products that they purchase, and the contents therein.

54.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which—

contrary to Defendant's representation—do not disclose the existence of Lead in the Products. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

56. Defendant's advertising and products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

56. Defendant made its untrue and/or misleading statement and representation willfully, wantonly, and with reckless disregard for the truth.

57. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

58. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, and/or selling of the Products.

61. The Products are considered a "good" under the relevant laws.

62. UCC section 2-314 provides that for goods to be merchantable must (a) pass

without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved.

63.    Defendant breached the implied warranty of merchantability because the Products have Lead. Bodily products are not expected to have Lead.

64.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Product. Defendant was put on constructive notice of its breach through media reports, as alleged herein, and upon information and belief through its own product testing and records.

65.    Plaintiff and each of the members of the Class were injured because the Products contained Lead. Defendant thereby breached the following state warranty laws:

      a.    Code of Ala. § 7-2-314;

      b.    Alaska Stat. § 45.02.314;

      c.    A.R.S. § 47-2314;

      d.    A.C.A. § 4-2-314;

      e.    Cal. Comm. Code § 2314;

      f.    Colo. Rev. Stat. § 4-2-314;

      g.    Conn. Gen. Stat. § 42a-2-314;

      h.    6 Del. C. § 2-314;

      i.    D.C. Code § 28:2-314;

      j.    Fla. Stat. § 672.314;

      k.    O.C.G.A. § 11-2-314;

l.      H.R.S. § 490:2-314;

m.     Idaho Code § 28-2-314;

n.      810 I.L.C.S. 5/2-314;

o.      Ind. Code § 26-1-2-314;

p.      Iowa Code § 554.2314;

q.      K.S.A. § 84-2-314;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-314;

t.      Md. Commercial Law Code Ann. § 2-314;

u.      106 Mass. Gen. Laws Ann. § 2-314;

v.      M.C.L.S. § 440.2314;

w.     Minn. Stat. § 336.2-314;

x.      Miss. Code Ann. § 75-2-314;

y.      R.S. Mo. § 400.2-314;

z.      Mont. Code Anno. § 30-2-314;

aa.    Neb. Rev. Stat. § 2-314;

bb.    Nev. Rev. Stat. Ann. § 104.2314;

cc.    R.S.A. 382-A:2-314;

dd.    N.J. Stat. Ann. § 12A:2-314;

ee.    N.M. Stat. Ann. § 55-2-314;

ff.     N.Y. U.C.C. Law § 2-314;

gg.    N.C. Gen. Stat. § 25-2-314;

hh.    N.D. Cent. Code § 41-02-31;

ii.     II. O.R.C. Ann. § 1302.27;

jj.     12A Okl. St. § 2-314;

kk.     Or. Rev. Stat. § 72-3140;

ll.     13 Pa. Rev. Stat. § 72-3140;

mm.     R.I. Gen. Laws § 6A-2-314;

nn.     S.C. Code Ann. § 36-2-314;

oo.     S.D. Codified Laws, § 57A-2-314;

pp.     Tenn. Code Ann. § 47-2-314;

qq.     Tex. Bus. & Com. Code § 2.314;

rr.     Utah Code Ann. § 70A-2-314;

ss.     9A V.S.A. § 2-314;

tt.     Va. Code Ann. § 8.2-314;

uu.     Wash. Rev. Code Ann. § 6A.2-314;

vv.     W. Va. Code § 46-2-314;

ww.     Wis. Stat. § 402.314; and

xx.     Wyo. Stat. § 34.1-2-314.

66.     As a direct and proximate result of Defendant's breach of the implied warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

67.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.    Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

69.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

70.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

71.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

72.    It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

73.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the proposed Class described herein; and (ii) appointing Plaintiff to serve as representative for the Class and Plaintiff's counsel to serve as Class Counsel;

(b) Awarding monetary damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members its costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.


Dated: November 20, 2024

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By: /s/ Jason P. Sultzer
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Charles E. Schaffer, Esq.
Daniel C. Levin, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Tel: (215) 592-1500
cschaffer@lfsblaw.com
dlevin@lfsblaw.com

James L. Ferraro, Esq.
**THE FERRARO LAW FIRM, P.A.**
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Tel: (305) 375-0111
jferraro@ferrarolaw.com

*Counsel for Plaintiff and the Class*